Slip Op. 10-82

UNITED STATES COURT OF INTERNATIONAL TRADE

_____
                                              :
ASSOCIATION OF AMERICAN    :
SCHOOL PAPER SUPPLIERS,      :
                                              :
      Plaintiff,                         :
                                              :            Before:        WALLACH, Judge
      v.                                  :            Court No.:     09-00163
                                              :
UNITED STATES,                        :
                                              :
      Defendant,                      :
                                              :
      and                              :
                                              :
SHANGHAI LIAN LI PAPER       :
PRODUCTS CO., LTD.,              :
                                              :
      Defendant-Intervenor.       :
_____:

[Plaintiff's Motion for Judgment on the Agency Record is GRANTED IN PART and DENIED IN PART.]

                             Dated:          July 27, 2010

Wiley Rein LLP (Timothy C. Brightbill, Alan H. Price, and Maureen E. Thorson) for Plaintiff Association of American School Paper Suppliers.

Tony West, Assistant Attorney General; Jeanne E. Davidson, Director, Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (John J. Todor); and Joanna Theiss, Office of Chief Counsel for Import Administration, Department of Commerce, Of Counsel, for Defendant United States.

Dorey & Whitney LLP (William E. Perry) for Defendant-Intervenor Shanghai Lian Li Paper Products Co., Ltd.

**OPINION**

**Wallach, Judge:**

**I**
**INTRODUCTION**

This action arises out of an administrative review by the U.S. Department of Commerce ("Commerce") of an antidumping duty order covering certain lined paper products from the People's Republic of China ("PRC"). Plaintiff Association of American School Paper Suppliers ("AASPS") challenges determinations by Commerce in Certain Lined Paper Products from the People's Republic of China: Notice of Final Results of the Antidumping Duty Administrative Review, 74 Fed. Reg. 17,160 (April 14, 2009) ("Final Results"). The court has jurisdiction pursuant to 28 U.S.C. § 1581(c).

AASPS's Motion for Judgment on the Agency Record ("AASPS's Motion") is GRANTED IN PART and DENIED IN PART. Commerce's selection of information to calculate surrogate financial values is unsupported by substantial evidence. Commerce's other challenged determinations are supported by substantial evidence and otherwise in accordance with law.

**II**
**BACKGROUND**

In September 2006, Commerce issued an antidumping duty order on certain lined paper products from the PRC ("subject merchandise"). See Notice of Amended Final Determination of Sales at Less Than Fair Value: Certain Lined Paper Products from the People's Republic of China; Notice of Antidumping Duty Orders: Certain Lined Paper Products from India, Indonesia and the People's Republic of China; and Notice of Countervailing Duty Orders: Certain Lined

2

Paper Products from India and Indonesia, 71 Fed. Reg. 56,949 (September 28, 2006). In October 2007, Commerce initiated the first administrative review of that order for the period of review from April 17, 2006 through August 31, 2007 ("the POR"). See Initiation of Antidumping and Countervailing Duty Administrative Reviews, 72 Fed. Reg. 61,621, 61,621 (October 31, 2007). Commerce selected Defendant-Intervenor Shanghai Lian Li Paper Products Co., Ltd. ("Lian Li") as a mandatory respondent. Id.

In antidumping duty proceedings concerning merchandise from the PRC, Commerce determines the normal value of that merchandise through an approach specific to non-market economy ("NME") countries. See 19 U.S.C. § 1677b(c); 19 C.F.R. § 351.408; Department of Commerce, Antidumping Manual (October 13, 2009) ("AD Manual"), Chap. 10; Certain Lined Paper Products from the People's Republic of China: Notice of Preliminary Results of the Antidumping Duty Administrative Review, 73 Fed. Reg. 58,540, 58,542 (October 7, 2008) ("Preliminary Results").[1] This approach uses surrogate data from a comparable market economy country to value the factors of production ("FOPs") (including materials, labor, and energy) and other costs of production ("non-FOP costs of production") (including factory overhead; selling, general, and administrative expenses; and profit) for the merchandise. See Department of Commerce, Antidumping Manual (October 13, 2009) ("AD Manual"), Chap. 10 at 14-18; see also 19 CFR § 351.408(c)(4). In valuing non-FOP costs of production, Commerce calculates surrogate financial values using the publicly available financial statements of a producer of comparable merchandise from the surrogate country. See 19 CFR § 351.408(c)(4). For the

---

[1] U.S. antidumping law requires the imposition of an antidumping duty upon imported merchandise that is being, or is likely to be, sold in the United States at less than fair value and that results in material injury or the threat of material injury to a domestic industry. See 19 U.S.C. § 1673. That antidumping duty is equal to the "amount by which the normal value exceeds the export price . . . for the merchandise." Id.

instant review, Commerce chose India as the surrogate country, because India is a market economy country that (1) is "at a level of economic development comparable to that of" the PRC and (2) is a significant producer of comparable merchandise. Preliminary Results, 73 Fed. Reg. at 58,542.

In November 2007, Commerce began issuing questionnaires to Lian Li regarding, inter alia, production and sale of subject merchandise. See, e.g., Certain Lined Paper Products from the People's Republic of China Questionnaire (November 8, 2007), Public Document ("P.D.") 11. From December 2007 through April 2008, Lian Li submitted information in response to these questionnaires. See, e.g., Lined Paper Products from China; Section A Response of Shanghai Lian Li Paper Products Co., Ltd. (December 6, 2007), P.D. 23 ("Section A Response"); Lined Paper Products from China; Fourth Supplemental Response of Shanghai Lian Li Paper Products Co., Ltd. (April 11, 2008), P.D. 69. This information included FOP databases for two of Lian Li's suppliers, Shanghai Sentian Paper Product Co., Ltd. ("Sentian") and Shanghai Miaopanfang Paper Product Co., Ltd. ("MPF"), and 2006-2007 financial information for Sundaram Multi Pap Ltd. ("Sundaram"), an Indian paper producer. See Lined Paper Products from China; Supplemental Section D Response of Shanghai Lian Li Paper Products Co., Ltd. (January 23, 2008), P.D. 45; Letter from Garvey Schubert Barer to Carlos Gutierrez, Secretary of Commerce, Re: Certain Lined Paper Products from China; Submission of Surrogate Value Information (April 1, 2008), P.D. 63 at 5. As a domestic interested party to the proceeding, see Preliminary Results, 73 Fed. Reg. at 58,540, AASPS submitted 2006-2007 financial information for Navneet Publications (India Limited) ("Navneet"), another Indian paper producer, see Letter from Wiley Rein LLP to Carlos M. Gutierrez, Secretary of Commerce, Re: Certain Lined Paper

4

Products from China, First Antidumping Duty Administrative Review: Comments on the

Valuation of Factor Inputs (April 8, 2008), Confidential Document ("C.D.") 16 at 7.

In October 2008, Commerce issued the Preliminary Results. See Preliminary Results, 73

Fed. Reg. 58,540. Commerce chose to use the Sundaram financial information to calculate

surrogate financial values, because it found that information to be "complete, publicly available,

and contemporaneous with the [POR]." Id. at 58,547. Commerce chose not to use the Sentian

and MPF data, because these data were "arbitrary and inaccurate" and therefore "unreliable." Id.

at 58,543. Commerce also determined that these suppliers had failed to act to the best of their

ability and therefore used "adverse facts available" to select a preliminary dumping rate of

217.23 percent for Lian Li. Id. at 58,543, 58,547.[2]

In January 2009, Commerce conducted onsite verification of Lian Li's data. See Memo

from Cindy Robinson and Victoria Cho, Case Analysts, U.S. Department of Commerce, to The

File, Re: Verification of Factors of Production Response of Shanghai MiaoPanFang Paper

Products Co., Ltd. ("MPF") (February 26, 2009), C.D. 32 ("MPF Verification Report");

Memorandum from Cindy Robinson and Victoria Cho, Case Analysts, U.S. Department of

Commerce, to The File, Re: Verification of the Sales and Factors of Production Responses of

Shanghai Lian Li Paper Products Co. Ltd. (February 26, 2009), C.D. 33; Memorandum from

Cindy Robinson and Victoria Cho, Case Analysts, U.S. Department of Commerce, to The File,

---

[2] If Commerce lacks complete information to make a determination because of, inter alia, a party's failure to cooperate, it must resort to "facts otherwise available" pursuant to 19 U.S.C. § 1677e(a). In some circumstances, however, Commerce must first provide a party that submitted a deficient response an opportunity to remedy that deficiency pursuant to 19 U.S.C. § 1677m(d). "Facts otherwise available" include "information or inferences which are reasonable to use under the circumstances" to make the applicable determination or substitute for the missing information. See Statement of Administrative Action accompanying the Uruguay Round Agreements Act, H.R. Rep. No. 103-316 (1994) ("SAA") at 869, reprinted in 1994 U.S.C.C.A.N. 4040, 4198. "[I]n selecting from among the facts otherwise available," Commerce "may use an inference that is adverse to the interests of" a party that has failed to cooperate. 19 U.S.C. § 1677e(b).

Re: Verification of the Sales and Factors of Production Responses of Sentian Paper Products Co., Ltd. (February 26, 2009), C.D. 34 ("Sentian Verification Report").

In April 2009, Commerce issued the Final Results. See Final Results, 74 Fed. Reg. 17,160. In the Final Results, Commerce calculated an antidumping duty rate of 22.35 percent for Lian Li. See id. at 17,161. Commerce continued to use the Sundaram financial information to calculate surrogate financial values. See id. at 17,162; Memorandum from John M. Andersen, Acting Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, to Ronald K. Lorentzen, Acting Assistant Secretary for Import Administration, Issues and Decisions for the Final Results of the First Administrative Review (April 6, 2009), P.D. 117 ("IDM") at 39. Commerce used Lian Li's FOP database, see Final Results, 74 Fed. Reg. at 17,164. It also used the FOP databases for MPF and Sentian for the materials input but resorted to "adverse facts available" for the labor and electricity inputs. See id at 17,163-64.

AASPS initiated this action on April 17, 2009, see Summons; Complaint, and Lian Li subsequently intervened as of right, see May 8, 2009 Order. AASPS moved for summary judgment, arguing that Commerce's "(1), reli[ance] on certain surrogate financial information put forth by Lian Li as the complete, contemporaneous financial statement of an Indian paper producer (2), accept[ance of] certain contradictory documents and statements proffered by Lian Li regarding production of subject merchandise in 2007; and (3), use[ of] certain surrogate value information to account for respondent's use of paper" are not supported by substantial evidence or are otherwise not in accordance with law. Brief in Support of Plaintiff AASPS' Rule 56.2 Motion ("AASPS's Brief") at 2.

**III**
**STANDARD OF REVIEW**

In an antidumping case, the court will hold a determination by Commerce unlawful if that determination is "unsupported by substantial evidence on the record, or otherwise not in accordance with law. 19 U.S.C. § 1516a(b)(1)(B)(i); see 19 U.S.C. § 1516a(a)(2)(B)(iii).

A determination by Commerce is supported by substantial evidence if the record contains "evidence that a reasonable mind might accept as adequate to support a conclusion." Cleo Inc. v. United States, 501 F.3d 1291, 1296 (Fed. Cir. 2007) (citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 477, 71 S. Ct. 456, 95 L. Ed. 456 (1951)). While the court must consider contradictory evidence, "the substantial evidence test does not require that there be an absence of evidence detracting from the agency's conclusion, nor is there an absence of substantial evidence simply because the reviewing court would have reached a different conclusion based on the same record." Id. (citing Am. Silicon Techs. v. United States, 261 F.3d 1371, 1376 (Fed. Cir. 2001); U.S. Steel Group v. United States, 96 F.3d 1352, 1357 (Fed. Cir. 1996); Universal Camera, 340 U.S. at 487-88).

**IV**
**DISCUSSION**

**A**
**Commerce's Selection Of Information To Calculate Surrogate Financial Values Is Unsupported By Substantial Evidence**

AASPS argues that substantial evidence supports neither (1) Commerce's selection of the Sundaram financial information for the purpose of calculating surrogate financial values, AASPS's Brief at 20, nor (2) Commerce's rejection of the Navneet financial information as

7

inaccurate, AASPS's Reply Brief to Defendant and Defendant-Intervenor's Response Briefs ("AASPS's Reply") at 6-7.  AASPS is correct.

19 U.S.C. § 1677b(c)(1)(B) requires Commerce to calculate surrogate financial values "based on the best available information regarding the values of such factors in a market economy country or countries considered to be appropriate by [Commerce]." 19 U.S.C. § 1677b(c)(1)(B).[3]  The process of calculating surrogate financial values is "difficult and necessarily imprecise." Allied Pacific Food (Dalian) Co. v. United States, 587 F. Supp. 2d 1330, 1342 (CIT 2008) (quoting Nation Ford Chem. Co. v. United States, 166 F.3d 1373, 1377 (Fed. Cir. 1999)) (discussing the valuation of FOPs).  As this court has noted:

> The term "best available" is one of comparison, i.e., the statute requires Commerce to select, from the information before it, the best data for calculating an accurate dumping [rate]. . . .  This "best" choice is ascertained by examining and comparing the advantages and disadvantages of using certain data as opposed to other data.

Zhejiang DunAn Hetian Metal Co. v. United States, Slip Op. 10-41 at 5 n.7, 2010 Ct. Int'l Trade LEXIS 42 (CIT April, 19 2010) (quoting Dorbest Ltd. v. United States, 30 CIT 1671, 1675, 462 F. Supp. 2d 1262 (2006) (subsequent history omitted)).

"Congress has vested Commerce with considerable discretion in selecting the best available information." Allied Pacific, 587 F. Supp. 2d at 1342.  However, Commerce's selection must still be supported by substantial evidence on the record and be otherwise in accordance with law. See 19 U.S.C. § 1516a(b)(1)(B)(i).  In order for a determination to satisfy this standard, "[t]here must be '[a] rational connection between the facts found and the choice made.'" Nucor

---

[3] The plain language of 19 U.S.C. § 1677b(c) suggests that the "best available information" standard applies only to the valuation of FOPs. See 19 U.S.C. § 1677b(c).  However, the Federal Circuit has also applied this standard to calculating surrogate financial values for the valuation of non-FOP costs of production. See Dorbest Ltd. v. United States, 604 F.3d 1363, 1373 (Fed. Cir. 2010).

Corp. v. United States, 594 F. Supp. 2d 1320, 1331-32 (Fed. Cir. 2008) (quoting Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168, 83 S. Ct. 239, 9 L. Ed. 2d 207 (1962)).

In the instant review, Commerce failed to articulate a rational connection between the evidence on the record and its selection of the Sundaram financial information. In the Preliminary Results, Commerce asserted that it selected the Sundaram financial information because that information was "complete, publicly available, and contemporaneous with the [POR]." Preliminary Results, 73 Fed. Reg. at 58,546. However, Commerce neither cited any facts to support that determination nor discussed its reasoning in any way. See id. In the IDM, Commerce again stated that the Sundaram financial information was the "best available information" because it was "complete, publicly available, and contemporaneous with the POR." IDM at 40. Again, however, Commerce offered no support for that determination. See id. Moreover, Commerce did not substantively address AASPS's arguments that the information was incomplete and incorrect. See id. at 38-40. Likewise, Defendant's Response to Plaintiff's Motion for Judgment upon the Agency Record ("Defendant's Response") provides no support for Commerce's determination. See Defendant's Response at 14. Because Commerce at no point offered any support for its selection of the Sundaram financial information, it has failed to articulate a "rational connection between the facts found and the choice made," Nucor Corp. v. United States, 594 F. Supp. 2d at 1331-32. Accordingly, Commerce's use of the Sundaram financial information is unsupported by substantial evidence.

Contrary to Lian Li's argument, Commerce could not have selected the Sundaram financial information "by default," Response Brief of Shanghai Lian Li Paper Products Co., Ltd. ("Lian Li's Response") at 17-18, because there is no evidence supporting Commerce's determination that the Navneet financial information was inaccurate. Commerce stated that (1)

9

during an earlier investigation, it had determined that the Navneet financial information was inaccurate and (2) nothing in the record contradicts that determination. IDM at 40. Neither of these statements is correct.

Commerce did not determine that the Navneet financial information was inaccurate during the earlier investigation. Rather, it declined to use Navneet's financial information in that investigation because it determined that Navneet's cost-of-production questionnaire responses were not useable. See Memorandum from David M. Spooner, Assistant Secretary for Import Administration, to Stephen J. Claeys, Deputy Assistant Secretary for Import Administration, Issues and Decision Memorandum for the Less-Than-Fair-Value Investigation of Certain Lined Paper Products from the People's Republic of China (August 30, 2006), cited in Notice of Final Determination of Sales at Less Than Fair Value, and Affirmative Critical Circumstances, In Part: Certain Lined Paper Products From the People's Republic of China, 71 Fed. Reg. 53,079, 53,081 (September 8, 2006), at cmt. 1; Notice of Final Determination of Sales at Less Than Fair Value, and Negative Determination of Critical Circumstances: Certain Lined Paper Products from India, 71 Fed. Reg. 45,012 (August 8, 2006).

The record contains evidence suggesting that Commerce considered the Navneet financial information to be accurate. In its administrative case brief, AASPS noted that Navneet had "successfully and completely participated in the first countervailing duty administrative review of the orders on [Certain Lined Paper Products] from India." AASPS's Case Brief at 58. In Certain Lined Paper Products from India, Commerce relied on Navneet's 2006 financial statements to calculate the countervailable subsidy rate. See Memorandum from John M. Andersen, Acting Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, to Ronald K. Lorentzen, Acting Assistant Secretary for Import Administration,

Issues and Decision Memorandum: Final Results of Countervailing Duty Administrative Review: Certain Lined Paper Products from India (February 3, 2009), <u>cited in</u> Certain Lined Paper Products From India: Final Results of Countervailing Duty Administrative Review, 74 Fed. Reg. 6,573, 6,574 (February 10, 2009), at cmts. 1-2. Commerce's decision to rely on this information undermines its statement that the information was inaccurate.

For these reasons, Commerce's determination that the Sundaram financial information is the best available information for calculation of surrogate financial values is unsupported by substantial evidence. This matter is remanded for Commerce to revisit this determination.

**B**
**Commerce's Acceptance of Lian Li's Suppliers' Production Information Is Supported by Substantial Evidence**

AASPS claims that Lian Li misled Commerce as to the levels of production by Lian Li's suppliers for 2006-2007. AASPS's Brief at 27-31.[4] AASPS bases its claim on a seeming discrepancy concerning 2007 production by MPF and Sentian. <u>Id.</u> The administrative record demonstrates Commerce's awareness of the production discrepancy. The record also demonstrates that (1) Commerce verified that neither MPF nor Sentian produced any subject merchandise in 2007 and (2) Lian Li explained that the discrepancy was due to the suppliers' joint tax-cutting sales and cost transfer system. As such, Commerce's determinations are supported by substantial evidence.

---

[4] AASPS also alleges that Lian Li committed tax fraud against the PRC. <u>See</u> AASPS's Brief at 31. AASPS fails to support this allegation with citation to the tax law of the PRC or to any other authority. <u>See generally</u> <u>id.</u>; Reply Brief to Defendant and Defendant-Intervenor's Response Briefs ("AASPS's Reply"). Instead, AASPS demonstrates why its unsupported allegation is also irrelevant: Lian Li and Sentian did not mislead Commerce with respect to the accounting practices that AASPS characterizes as fraudulent precisely because they "openly admit[ted]" to those practices. AASPS's Brief at 31; <u>see</u> <u>id.</u> at 4.

Lian Li informed Commerce that Sentian closed its factory in November 2006. See Section A Response at 12. Soon thereafter, Lian Li submitted FOP databases for MPF and Sentian that showed that neither supplier produced subject merchandise after December 2006. See IDM at 16; Lined Paper Products from China; Supplemental Section D Response of Shanghai Lian Li Paper Products Co., Ltd. (January 23, 2008), P.D. 45 at 11-12. However, Lian Li also submitted financial statements and tax returns that "showed that all three factories [Lian Li, MPF and Sentian] were engaged in significant production and sales throughout both 2006 and 2007, and that they maintained significant assets." AASPS's Brief at 27; see Lined Paper Products from China; Supplemental Section A Response of Shanghai Lian Li Paper Products Co., Ltd. (January 22, 2008), P.D. 44 at Appendix S1-4.

Lian Li explained that the seeming inconsistency concerning 2007 production occurred because, after the Sentian factory closed, Sentian and MPF transferred materials and finished products other than subject merchandise between each other in order to take advantage of a tax benefit. See IDM at 16; Post-Preliminary (Fifth) Supplemental Response of Shanghai Lian Li Paper Products Co., Ltd. (October 16, 2008), C.D. 26 ("Fifth Supplemental Response") at 1-2. Lian Li further explained that Sentian and MPF did not share a consolidated financial statement even though they shared management and accounting staff, because sharing such a statement would have "defeat[ed] the purpose of having two separate companies to take advantage of the" tax benefit. Fifth Supplemental Response at 2.

Commerce confirmed that there was no production of subject merchandise by either Sentian or MPF in 2007. See IDM at 15-16. At verification, Commerce spoke to MPF officials who confirmed that the Sentian factory had closed prior to January 2007. See MPF Verification Report at 5. Commerce found that the "great majority" of Lian Li's shipments were made in

12

2006 and that, "of the few shipments which were made in 2007, almost all purchase invoices were dated in 2006." IDM at 16. Commerce also verified the process by which MPF and Sentian transferred costs and sales between each other and found that the actual consumption of materials in Lian Li's post-preliminary responses corresponded to the company-specific production quantity provided at verification. See MPF Verification Report at 12-13; Sentian Verification Report at 11-13; IDM at 12.

Commerce concluded that the tax-benefit strategy, in light of Lian Li's reported information and supplemental responses, was a reasonable explanation for the seeming inconsistency. See IDM at 16. Commerce accordingly determined that this seeming inconsistency did not invalidate the FOP information that Lian Li submitted for MPF and Sentian. See id. at 15. Substantial evidence supports Commerce's use of this information.

## C
### Commerce's Use of Lian Li's Paper Input Data Is Supported By Substantial Evidence

AASPS argues that Lian Li (1) did not disclose to Commerce its use of both ream sheet paper ("ream paper") and roll paper (instead claiming to use only roll paper); and (2) failed to "make any revisions to its FOP database" or "make corrections to its consumption rate tables" to reflect the difference in cost between the paper types. AASPS's Brief at 12. AASPS also argues that Commerce should have used the facts otherwise available and applied adverse inferences to Lian Li because Lian Li failed to disclose its use of ream paper and adjust its FOP. See id. at 13. In fact, however, Lian Li disclosed to Commerce its use of both ream and roll paper and explained its reasons for not differentiating between these paper types. See Re: Lined Paper Products from the People's Republic of China; Submission of Lian Li's Rebuttal Brief (March

13

16, 2009), C.D. 37 ("Lian Li's Case Brief") at 21-22. Accordingly, Commerce's use of Lian Li's paper input data is supported by substantial evidence.

AASPS states that Lian Li withheld information from Commerce regarding its use of ream paper. See Re: Certain Lined Paper Products from the People's Republic of China; AASPS Case Brief (March 6, 2009), C.D. 35 ("AASPS's Case Brief") at 41; AASPS's Brief at 13. However, Lian Li did provide Commerce with information on its use of ream and roll paper. See Lined Paper Products from China; Fourth Supplemental Response of Shanghai Lian Li Paper Products Co., Ltd. (April 11, 2008) C.D. 17 at Appendices S4-2b (Sentian), S4-3b (MPF), S4-4 (total POR). Commerce was on notice as early as April 11, 2008—nearly six months before issuance of the Preliminary Results—that Lian Li used ream and roll paper. See id.[5]

Lian Li explained that its ream paper consisted of very large sheets that did not cost significantly more than roll paper and that, like roll paper, required significant processing by Lian Li. Lian Li's Case Brief at 21-22. In support, Lian Li submitted production charts to Commerce that specified that all paper was cut as part of the production process. See Lined Paper Products from China; Section D Response of Shanghai Lian Li Paper Products Co., Ltd. (January 10, 2008), C.D. 6 ("Section D Response") at Appendices A-1, B-2, C-2.

---

[5] AASPS cites Honey from the People's Republic of China: Intent to Rescind and Preliminary Results of Antidumping Duty New Shipper Reviews (June 7, 2006), 71 Fed. Reg. 32,923, 32,926 ("Honey from PRC") for the proposition that where Commerce "has discovered misreported [or unreported] factor inputs, [Commerce] has opted to utilize partial adverse facts available with respect to that input." AASPS's Case Brief at 40-41; AASPS's Brief at 38. In Honey from PRC, Commerce preliminarily held that the use of a partial adverse inference was warranted due to the importer's failure to accurately report consumption of inputs during the period of review—a failure that Commerce did not discover until verification. Honey from PRC, 71 Fed. Reg. at 32,926. In contrast, Lian Li submitted information about its use of ream and roll paper six months before the Preliminary Results and nine months before verification. See Lined Paper Products from China; Fourth Supplemental Response of Shanghai Lian Li Paper Products Co., Ltd. (April 11, 2008), C.D. 17 at Appendices S4-2b (Sentian), S4-3b (MPF), S4-4 (total POR). Accordingly, Honey from PRC is inapposite.

Commerce substantiated Lian Li's explanation during onsite verification of MPF. IDM at 33. At verification, Commerce saw sheets of ream paper and noted that they were not custom-cut or printed; rather, they were very large sheets that were so similar to roll paper that they were "completed" on the same machines as was the roll paper. See IDM at 33-34; MPF Verification Report at 4-5. Commerce therefore determined that "there is no reason to suggest a significant cost difference between papers in roll and ream." IDM at 34.

AASPS argues that Commerce's determination should be remanded because it "neither acknowledged nor addressed the undeniable fact . . . that there are substantial cost differences inherent in the purchase of unrolled, pre-cut paper (reams or sheets) versus rolled, uncut paper." AASPS's Brief at 37. However, AASPS offers no affirmative evidence to prove the "undeniable fact" that there are substantial cost differences between the two kinds of paper. See id. Indeed, when asked at oral argument to point to any such evidence in the record, AASPS offered only conjecture. See May 21, 2010 Oral Argument at 00:01:37-08:12.[6]

Because Commerce could reasonably have determined that ream paper does not cost significantly more than roll paper, and because AASPS has offered no evidence to prove otherwise, Commerce's determination is well within the discretion generally afforded to Commerce in such matters. See Micron Tech., Inc. v. United States, 117 F.3d 1386, 1397 (Fed. Cir. 1997) (noting that the plaintiff bears the burden of proving that Commerce's determinations

---

[6] In support of its position, AASPS pointed to price lists of an Indian paper producer, see Letter from Garvey Schubert Barer to Carlos Gutierrez, Secretary of Commerce, Re: Certain Lined Paper Products from China; Submission of Surrogate Value Information (April 1, 2008), P.D. 63 ("Surrogate Value Submission Letter") at Attachment 1, and descriptions of Lian Li's production processes, see Lined Paper Products from China; Section D Response at Appendix A-2. The price lists offer no support, because the price differences between newsprint and other listed papers—upon which AASPS entirely relies—could be the result of any number of factors. See Surrogate Value Submission Letter at Attachment 1. Similarly, Lian Li's production processes offer only the most tenuous and inferential of support, if any. See Section D Response at Appendix A-2.

15

are unsupported by substantial evidence).  Accordingly, substantial evidence supports Commerce's use of Lian Li's paper input data.

## V
## CONCLUSION

For the reasons stated above, AASPS's Motion for Judgment on the Agency Record is GRANTED IN PART and DENIED IN PART.  This matter is REMANDED to Commerce for action consistent with this opinion.


              \_\_/s/ Evan J. Wallach\_\_\_\_
              Evan J. Wallach, Judge

Date:   July 27, 2010
        New York, New York